KENNETH J. GUIDO, Cal. Bar No. 40020
E-mail: guidok@sec.gov
SARAH M. HALL, Admitted *Pro Hac Vice*
E-mail: halls@sec.gov
D. ASHLEY DOLAN, Admitted *Pro Hac Vice*
E-mail: dolanda@sec.gov
HEATHER A. POWELL, Admitted *Pro Hac Vice*
E-mail: powellh@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549
Telephone: (202) 551-4480
Facsimile: (202) 772-9282

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> STEVE QI and LAW OFFICES OF STEVE QI & ASSOCIATES, A PROFESSIONAL CORPORATION, <br><br> Defendants. | Case No. 2:17-cv-08856 CJC(JCx) <br><br> **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br> Date:    March 26, 2018 <br> Time:    1:30 p.m. <br> Crtm:    9B <br> Judge:  Hon. Cormac J. Carney |

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................. 1

II.  STATEMENT OF FACTS ................................................................... 3

III.  ARGUMENT ....................................................................................... 5

    A.  The Fraud Claims Satisfy Rule 9(b) ......................................... 5

    B.  Rule 9(b) Does Not Apply to The Unregistered Broker Claim .......... 10

    C.  The Fraud and Unregistered Broker Claims Satisfy Rule 12(b)(6) .... 10

        1.  The SEC States Claims for Relief under Sections 10(b) and 17(a) ................................................................................ 11

        2.  The SEC States a Claim For Relief Under Section 15(a) ......... 15

        3.  Defendants' Reliance on *SEC v. Kramer* is Misplaced ............ 19

IV.  CONCLUSION ................................................................................. 20

i

1

## <u>TABLE OF AUTHORITIES</u>

2

## <u>CASES</u>

3

*American Bankers Association v. SEC*,

4

      804 F.2d 739 (D.C. Cir. 1986) ...................................................................19

5

*Ashcroft v. Iqbal*,

6

      556 U.S. 662 (2009) ...................................................................................11

7

*Balistreri v. Pacifica Police Dep't*,

8

      901 F.2d 696 (9th Cir.1990).......................................................................11

9

*Basic Inc. v. Levinson*,

10

      485 U.S. 224 (2009) ...................................................................................12

11

*Bell Atlantic Corp. v. Twombly*,

12

      550 U.S. 544 (2007) ...................................................................................11

13

*Chiarella v. United States*,

14

      445 U.S. 222 (1980) ...................................................................................12

15

*Cornhusker Energy Lexington, LLC v. Prospect St. Ventures*,

16

      2006 U.S. Dist. LEXIS 68959 (D. Neb. Sep. 12, 2006) ...........................15

17

*Corral v. Carter's Inc.*,

18

      2014 U.S. Dist. LEXIS 5880 (E.D. Cal. Jan. 16, 2014) ..............................5

19

*Doe v. United States*,

20

      58 F.3d 494 (9th Cir. 1995).........................................................................11

21

*Dreamstone Entm't v. Maysalward Inc.*,

22

      2014 U.S. Dist. LEXIS 116977 (C.D. Cal. Aug. 18, 2014)................. 5, 6, 8

23

*Fecht v. Price Co.*,

24

      70 F.3d 1078 (9th Cir. 1995)........................................................................5

25

*Gomez v. Carmax Auto Superstores California, LLC*,

26

      2015 U.S. Dist. LEXIS 8801 (C.D. Cal. Jan. 22, 2015) ..............................7

27

*Gilligan v. Jamco Dev. Corp.*,

28

      108 F.3d 247 (9th Cir. 1997)..................................................................... 10

*Huntair, Inc. v. Gladstone*,

    774 F. Supp. 2d 1035 (N.D. Cal. 2011) ........................................................ 7

*In re Gilead Sciences Sec. Litig.*,

    536 F.3d 1049 (9th Cir. 2008) ................................................................... 11

*Johnson v. Riverside Healthcare System, LP*,

    534 F. 3d 1116 (9th Cir. 2008) .................................................................. 11

*Kaplan v. Rose*,

    49 F.3d 1363 (9th Cir. 1994) ...................................................................... 5

*Kearns v. Ford Motor Co.*,

    567 F.3d 1120 (9th Cir. 2009) ..................................................................... 5

*Ogbonna v. USPLabs, LLC*,

    2014 U.S. Dist. LEXIS 79001 (W.D. Tex. June 10, 2014) ........................... 9

*Pinter v. Dahl*,

    486 U.S. 622 (1988) ................................................................................. 19

*Pruco Life Ins. Co. v. Brasner*,

    2011 U.S. Dist. LEXIS 72752 (S.D. Fla. July 7, 2011) ........................... 8, 9

*SEC v. Arcturus Corp.*,

    171 F. Supp. 3d 512 (N.D. Tex. 2016) ...................................................... 16

*SEC v. Benger*,

    697 F. Supp. 2d 932 (N.D. Ill. 2010) ................................................... 16, 17

*SEC v. Collyard*,

    154 F. Supp. 3d 781 (D. Minn. 2015) ....................................................... 15

*SEC v. Feng*,

    2017 U.S. Dist. LEXIS 103592 (C.D. Cal. June 29, 2017,

    as amended Aug. 10, 2017), *appeal docketed*, No. 17-56522

    (9th Cir. Oct. 10, 2017) ...................................................................*passim*

*SEC v. Hansen*,

    1984 U.S. Dist. LEXIS 17835, *26 (S.D.N.Y. Apr. 6, 1984) ..................... 16

*SEC v. Huttoe*,

      1998 U.S. Dist. LEXIS 23211 (D.D.C. Sep. 14, 1998) .............................. 14

*SEC v. Interlink Data Network*,

      1993 U.S. Dist. LEXIS 20163 (C.D. Cal. Nov. 15, 1993) .......................... 15

*SEC v. Kramer*,

      778 F. Supp. 2d 1320 (M.D. Fla. 2011) ............................................... 19, 20

*SEC v. Liu*,

      2016 U.S. Dist. LEXIS 181585 (C.D. Cal. Aug. 17, 2016) ........................ 10

*SEC v. Medical Capital Holdings, Inc.*,

      2010 U.S. Dist. LEXIS 29601 (C.D. Cal. Feb. 24, 2010) ............................ 8

*Siemers v. Wells Fargo & Co.*,

      2006 U.S. Dist. LEXIS 60858 (N.D. Cal., Aug. 14, 2006) ................... 13, 14

*Std. Furniture Mfg. Co. v. LF Prods. PTE Ltd*,

      2017 U.S. Dist. LEXIS 174293 (C.D. Cal. June 13, 2017) ...................... 5, 8

*United States v. Chestman*,

      947 F.2d 551 (2d Cir. 1991) ....................................................................... 13

*United States v. Clarkson*,

      2006 U.S. Dist. LEXIS 74169 (D.S.C. Aug. 2, 2006) ................................... 7

*United States v. Microsoft Corp.*,

      56 F.3d 1448 (D.C. Cir. 1995) ..................................................................... 1

*United States v. O'Hagan*,

      521 U.S. 642 (1997) .................................................................................. 13

*Vess v. Ciba-Geigy Corp.*,

      317 F.3d 1097 (9th Cir. 2003) ................................................................ 5, 10


**<u>FEDERAL STATUTES</u>**

***Investment Advisors Act of 1940***

Section 202(a)(11)(B) ............................................................................. 18

*Securities Act of 1933*

Section 17(a) [15 USC § 77q(a)] ...................................................................1, 4, 11

*Securities Exchange Act of 1934*

Section 3(a)(4)(A) [15 U.S.C. § 78c(a)(4)(A)].................................................15, 19

15 U.S.C. § 78c(a)(9) ..................................................................................................15

Section 10(b) [15 USC § 78j(b)] ...........................................................1, 4, 11, 12

Section 15(a) [15 U.S.C. § 78o(a)] .................................................................*passim*

## **FEDERAL REGULATIONS**

Rule 10b-5 [17 C.F.R. § 240.10b-5].....................................................................1, 4, 12

8 C.F.R. §§ 204.6(e) ....................................................................................................3

8 C.F.R. §§ 204.6(m) ...................................................................................................3

## **OTHER AUTHORITIES**

California Rules of Professional Conduct Rule 3-300 .........................................13

California Rules of Professional Conduct Rule 3-310(B)(4) ...............................13

California Rules of Professional Conduct Rule 3-500 .........................................13

Rule 9(b) [Fed. R. Civ. P., Rule 9(b)]......................................................*passim*

Rule 12(b)(6) [Fed. R. Civ. P., Rule 12(b)(6)].......................................*passim*

*Persons Deemed Not to Be Brokers*,

      Exchange Act Release No. 22172, 50 Fed. Reg. 27940 (1985).................17

## I.    INTRODUCTION

Steve Qi, an immigration attorney, and his law firm, Law Offices of Steve Qi & Associates, ("Defendants") sold securities in a United States immigration program ("EB-5 program") to at least 74 of their clients for which they were surreptitiously paid over $1.6 million upon the completions of the sales ("transaction-based compensation") by the EB-5 Regional Centers, the entities authorized by the government to offer securities to potential immigrants.  In doing so, Defendants acted as unregistered brokers in violation of Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") and defrauded their clients in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act"), Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder.

Defendants move to dismiss the Complaint because they assert that (1) the claims are not pleaded with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, and (2) the SEC has not stated a cause of action pursuant to Rule 12(b)(6).  These arguments do not have merit.

Defendants misstate the Rule 9(b) standard and wrongly apply it to the non-fraud unregistered broker claim in this case.  The SEC has pleaded its fraud claims with more than sufficient specificity to allow Defendants to prepare an adequate answer (the appropriate standard).  It has alleged the "who, what, when, where, and how" of the alleged fraud.  Thus, contrary to Defendants' assertion, the SEC has satisfied the requirements of Rule 9(b).

Defendants attempt to deflect responsibility from Defendants' own fraudulent conduct by pointing fingers at the Regional Centers from whom Defendants were paid transaction-based compensation. Dkt. 17 at 10.  Whether the SEC has an action against the Regional Centers is irrelevant.[1]  Rather, the fraud

---

[1] This Court need not "reach beyond the complaint to evaluate claims that the government did not make and to inquire as to why they were not made." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1459 (D.C. Cir. 1995).

1

1   alleged in the Complaint is between Defendants and their clients, and whether

2   Regional Centers have separate legal exposure is not relevant to the SEC's claims

3   in this case.

4         Defendants also claim that the fraud allegations only implicate the

5   Defendants' professional obligations and the state bar rules.  That these fraudulent

6   omissions may also constitute legal and ethical violations subject to discipline by

7   the state bar is also not relevant here.  That other regulators may also have claims

8   against Qi and his firm does not preclude the SEC's enforcement of the federal

9   securities laws.

10         Finally, contrary to Defendants' assertion, the Complaint states a claim for

11   relief on its unregistered broker claim.  In addition to receiving over $1.6 million in

12   transaction-based compensation, Defendants steered their clients to only six out of

13   hundreds of Regional Centers offering EB-5 investments, recommended particular

14   investments to their clients, were liaisons between investors and Regional Centers,

15   and entered into agreements with the preferred Regional Centers to market their

16   investments, all without registering as brokers.  These allegations are more than

17   sufficient to satisfy Rule 12(b)(6).

18         Notably absent from Defendants' brief is any acknowledgment of the recent

19   opinion from this District in which an EB-5 immigration attorney was found to

20   have acted as an unregistered broker and engaged in fraud for failing to disclose his

21   commissions.  *SEC v. Feng*, No. 15-cv-9420-CBM-SS, 2017 U.S. Dist. LEXIS

22   103592 (C.D. Cal. June 29, 2017, as amended Aug. 10, 2017), *appeal docketed*,

23   No. 17-56522 (9th Cir. Oct. 10, 2017).  The facts of that case, although not

24   identical, are strikingly similar to those here.  As alleged against Qi, attorney Feng

25   received transaction-based compensation from multiple EB-5 Regional Centers for

26   facilitating securities transactions.  Although non-binding and on appeal, the case is

27   instructive in that this Court has addressed – and found entirely in the SEC's favor

28   – many of the issues Defendants raise in their motion.

## II.   STATEMENT OF FACTS

This case concerns investments offered under the EB-5 Immigrant Investor Program, a federal program that creates a path to permanent U.S. residency for foreign investors who invest at least $500,000 in domestic job-creating projects approved by the United States Citizenship and Immigration Service.  Dkt. 1 ¶¶ 13-19.  The EB-5 investments at issue here are administered by entities called Regional Centers.  *Id*. ¶ 20.  Regional Centers are business entities that pool EB-5 contributions to sponsor capital investment projects and offer foreigners defined investment opportunities.  8 C.F.R. §§ 204.6(e), 204.6(m)(3).

Qi is the primary attorney of the Law Offices of Steve Qi & Associates ("Law Offices of Qi").  Qi and his firm provide immigration law services to clients, including EB-5 investors.  *Id*. ¶¶ 9-10.  In addition to serving as lawyers, Qi and his firm acted as unregistered brokers.  They provided their clients with a list of recommended EB-5 offerings (*id*. ¶ 38); they obtained offering documents from Regional Centers for clients and transmitted their clients' signed offering documents to the Regional Centers (*id*. ¶ 39); they communicated directly with Regional Centers on behalf of their clients (*id*. ¶ 40); they hosted a seminar to promote an EB-5 offering (*id*. ¶ 41); and they contracted with Regional Centers to market projects and solicit investors (*id*. ¶ 42).

In exchange for these brokerage services, the Regional Centers paid Defendants transaction-based compensation.  *Id*. ¶¶ 6, 46.  Between May 2007 and February 2015, Defendants received transaction-based compensation totaling $1,667,248 for at least 74 investor clients.  *Id*.  Until September 2012, these commissions were paid directly to the Law Offices of Qi or a United States-based company controlled by Qi.  *Id*. ¶ 48.  After Defendants were told by one of the Regional Centers that payments of transaction-based compensation violated federal securities laws (*id*. ¶ 49), Qi directed that future payments of transaction-based compensation be run through overseas bank accounts in his relatives' names on

3

Defendants' behalf (*id*. ¶ 52).  Despite Qi's initial sworn declaration stating the opposite,[2] Qi later confirmed under oath in the SEC's investigation that the overseas relatives had no EB-5 involvement and all money paid to them – over $1 million in commissions – belonged to Defendants.  *Id*. ¶¶ 54-56.

Defendants, in violation of their fiduciary, legal, and ethical duties, made material omissions and fraudulent "half truths" regarding their receipt of transaction-based compensation and the conflicts of interest such compensation created (*id*. ¶¶ 7, 57-60):  (1) Defendants failed to disclose the transaction-based compensation entirely – in retainer agreements or any other way – to at least twelve clients (*id*. ¶ 58);  (2) Defendants disclosed to twenty other clients that they "may" receive finder's fees from Regional Centers, yet this was a "half truth" in that Defendants omitted that the Regional Centers were obligated to pay them transaction-based compensation (*id*. ¶ 59);  (3) for six clients, the size of Defendants' commission payment was left to the discretion of Defendants, ranging from $0 to $40,000, and Defendants did not disclose the material fact that investors could pay up to $40,000 less in administrative fees for the exact same investment if the transaction-based compensation was not paid (*id*. ¶ 60).  Defendants collected substantial, secret commissions from their clients with whom they had a fiduciary relationship and to whom they owed legal and ethical obligations.  *Id*.  ¶¶ 46, 58-60

As a result of these facts, the Complaint alleges that Defendants violated the antifraud provisions of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder, as well as the registration provision of Section 15(a) of the Exchange Act.  *Id*. ¶ 59

---

[2] Qi's misstatements to the SEC significantly prolonged its investigation, which (despite Defendants' statements to the contrary (Dkt. 17 at 2)) lasted roughly three and a half years from initial subpoena to the filing of the Complaint.

1   **III.   ARGUMENT**

2        Defendants' motion to dismiss the Complaint pursuant to Rule 9(b) and Rule

3   12(b)(6) is without merit and should be denied.

4        **A.     The Fraud Claims Satisfy Rule 9(b)**

5        Rule 9(b) requires a plaintiff to state with particularity the circumstances

6   constituting fraud.  Fed. R. Civ. P. 9(b).  "In a securities fraud action, a pleading is

7   sufficient under Rule 9(b) if it identifies the circumstances of the alleged fraud so

8   that the defendant can prepare an adequate answer." *Fecht v. Price Co.*, 70 F.3d

9   1078, 1082 (9th Cir. 1995) (*quoting Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.

10  1994)).  The allegations must be "specific enough to give defendants notice of the

11  particular misconduct…so that they can defend against the charge and not just deny

12  that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

13  1124 (9th Cir. 2009) (internal citations and quotations omitted).

14       Under Rule 9(b), plaintiffs must typically set forth the "who, what, when,

15  where, and how" of the alleged fraud.  *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097,

16  1106 (9th Cir. 2003).  But it is not a rigid checklist.  *See Dreamstone Entm't v.

17  Maysalward Inc.*, No. 14-cv-02063-CAS-SSx, 2014 U.S. Dist. LEXIS 116977, *8-

18  9 (C.D. Cal. Aug. 18, 2014).

19       When fraud claims are premised on a defendant's omission (as here,

20  Defendants' failure to fully disclose commissions), Rule 9(b)'s particularity

21  requirements are relaxed.  *See, e.g.*, *Std. Furniture Mfg. Co. v. LF Prods. PTE Ltd*,

22  No. 16-cv-2097-CJC-KESx, 2017 U.S. Dist. LEXIS 174293, *11-12 (C.D. Cal.

23  June 13, 2017) ("a fraud by omission or fraud by concealment claim can succeed

24  without the same level of specificity required by a normal fraud claim" (internal

25  quotations and citations omitted)); *Corral v. Carter's Inc.,* No. 13-cv-0262-AWI-

26  SKO, 2014 U.S. Dist. LEXIS 5880, *10 (E.D. Cal. Jan. 16, 2014) ("a claim of fraud

27  by omission cannot, as a practical matter, require the same degree of adherence to

28  the 'who what when and where' standard imposed by Rule 9(b) on claims of

affirmative misrepresentation."). The requirements of 9(b) are further relaxed where, as here, the information at issue is peculiarly within the defendant's knowledge. *See, e.g., Dreamstone Entm't*, 2014 U.S. Dist. LEXIS 116977, at *11.

The SEC's Complaint satisfies the "who, what, when, where, and how" test.

As to the "who," the Complaint alleges that Defendants defrauded their foreign clients investing in the EB-5 offerings both for which Defendants received transaction-based compensation and to whom Defendants failed to disclose receipt of their commissions. Dkt. 1 ¶¶ 58-61.

With respect to the "what," the Complaint alleges that Defendants (1) failed to disclose the receipt of commissions at all to certain investors (*id.* ¶ 58); (2) included in certain retainer agreements that Defendants "may" receive commissions, but omitted information necessary to make that reference not misleading when, in fact, Defendants knew that the Regional Centers were obligated to and did pay them transaction-based compensation (*id.* ¶ 59); and (3) failed to disclose that the amount of certain transaction-based compensation payments were left to Defendants' discretion such that investors could have received a $40,000 discount on administrative fees for the exact same investment (*id.* ¶ 60). Of the at least 74 investors for whom Defendants received transaction-based compensation, Defendants failed to disclose the transaction-based compensation to at least 12 investors and omitted material facts regarding the transaction-based compensation to at least another 26 investors.

The Complaint properly alleges the "when" as occurring throughout Defendants' scheme to conceal their receipt of transaction-based compensation, namely May 2007 until February 2015.[3] *Id.* ¶¶ 46, 58, 59. The Rule 9(b)

---

[3] Defendants have not sought dismissal on the ground that any claim is barred by the statute of limitations, and the SEC has not asserted such a claim. The Complaint alleges the overall conduct of Defendants (for example, they began accepting transaction-based compensation as early as May 2007 (Dkt. 1 ¶ 46)), and also specifies narrower conduct given statute of limitations considerations (for example, Defendants represented 61 clients for whom they received transaction-

particularity requirement as to "time" is relaxed both where the fraud occurred over a period of time (*see, e.g., United States v. Clarkson*, No. 05-cv-2734-HMH-BHH, 2006 U.S. Dist. LEXIS 74169, *5 (D.S.C. Aug. 2, 2006)) and for claims based on fraudulent omissions because "a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act." *Gomez v. Carmax Auto Superstores California, LLC*, No. 14-cv-09019-CAS-PL, 2015 U.S. Dist. LEXIS 8801, *13 (C.D. Cal. Jan. 22, 2015) (*quoting Huntair, Inc. v. Gladstone*, 774 F. Supp. 2d 1035, 1044 (N.D. Cal. 2011)).

The Complaint properly alleges the "where" of Defendants' fraud. The fraud is unlimited given that allegations involve omissions of material facts; yet, the SEC has properly alleged that Defendants did not make adequate disclosures in any of their retainer agreements or elsewhere. *Id*. ¶¶ 58-60.

Finally, "how" Defendants committed this fraud is by failing to fully disclose their receipt of commissions, which is information that would have been material to a reasonable investor's investment decision. *Id*. ¶¶ 7, 57-62.

There can be no question that this is sufficient detail for the Defendants to prepare an adequate answer. In fact, Defendants' own motion suggests that they fully understand the alleged fraud: "if Qi did anything wrong, it was to fail to adequately disclose to the clients the fees Qi's Law Firm would be receiving upon the success of the EB-5 Visa Application…." Dkt. 17 at 10.

Despite these clear facts, Defendants assert that that the SEC failed to satisfy Rule 9(b) because it did not identify *by name* each of Defendants' clients to whom they failed to disclose receipt of commissions (the "who"). Defendants claim they are prejudiced because they cannot ascertain the investor clients who were defrauded, since they have "represented thousands of clients." Dkt. No. 17 at 2. This claim is at best disingenuous. The SEC alleges that Defendants defrauded

based compensation since January 2012 (*id*. ¶ 6, 46)). The Complaint also describes the tolling agreements executed between the parties (*id*. ¶¶ 63-64).

1   *only* clients whose investment led to Defendants receiving transaction-based
2   compensation from Regional Centers (totaling at least 74 clients) *and* for whom
3   Defendants did not disclose the transaction-based compensation.[4]  Defendants
4   know the clients for whom they received transaction-based compensation, and
5   because the retainer agreements were signed by Qi on behalf of his firm, they know
6   the identity of the at least 12 clients for whom they did not disclose the transaction-
7   based compensation and the identity of the at least 26 investors for whom they
8   omitted material facts necessary to make their disclosures not misleading.  Since the
9   information is peculiarly within the defendant's knowledge, the "who" requirement
10   is satisfied.  *See, e.g. Std. Furniture Mfg.*, 2017 U.S. Dist. LEXIS 174293, at *13;
11   *Dreamstone Entm't*, 2014 U.S. Dist. LEXIS 116977, at *10-11.  Additionally, since
12   the SEC is not required to prove reliance, it is not required under Rule 9(b) to plead
13   which particular investors were defrauded or injured.  *SEC v. Medical Capital*
14   *Holdings, Inc.*, No. 09-cv-0818-DOC-RNBx, 2010 U.S. Dist. LEXIS 29601, *7-8
15   (C.D. Cal. Feb. 24, 2010) ("the SEC is not required under Rule 9(b) to plead which
16   particular investors were injured by their reliance on the false statements.").

17          Similarly, with regard to not naming the six Regional Centers who paid
18   Defendants, it is disingenuous for Defendants to imply that the SEC could be
19   referring to any six "among hundreds of Regional Centers selling securities."  Dkt.
20   17 at 2.  While the SEC could name these Regional Centers, "nothing in Rule 9(b)
21   requires that a claim include the name of every person involved."  *Pruco Life Ins.*
22   *Co. v. Brasner*, No. 10-cv-80804, 2011 U.S. Dist. LEXIS 72752, at *16 (S.D. Fla.
23   July 7, 2011).  The six Regional Centers at issue in the Complaint are those that
24   paid Defendants significant transaction-based compensation – collectively over

---

26   [4] Because Defendants refused to provide all of the retainer agreements at issue, and
27   the SEC was able to procure only some, the SEC was forced to couch its allegations
     in the Complaint regarding numbers of investors who were defrauded with terms
     such as "at least."  Dkt. 1 ¶¶ 58-60.  The SEC should not be faulted for Defendants'
28   failure to comply with the SEC's administrative subpoenas.

8

1    $1.6 million.  Defendants know the Regional Centers who paid them transaction-

2    based compensation, as shown by their reference to one by name in their motion,

3    American Life Inc. ("ALI").  Dkt. 17 at 23, 25.  Furthermore, as with the investor

4    names, the identity of the specific Regional Centers at issue may be easily obtained

5    in discovery.  *See Brasner*, 2011 U.S. Dist. LEXIS 72752, at *16 (denying Rule

6    9(b) challenge, finding identity of clients may be obtained in discovery).

7         Defendants also seek dismissal of the fraud claims pursuant to Rule 9(b)

8    because "there [are] insufficient facts to support an inference of scienter."  Dkt. 17

9    at 14.  This assertion is without merit.  The Complaint alleges sufficient facts

10   supporting an inference of scienter, including that Qi is a licensed lawyer, Qi

11   arranged for transaction-based compensation to be paid through overseas relatives,

12   Defendants failed to disclose this transaction-based compensation in certain retainer

13   agreements or elsewhere, Qi signed certain retainer agreements containing material

14   omissions, and Defendants failed to disclose that the amount of certain

15   commissions were at their discretion.  Dkt. 1 ¶¶ 9, 46-60.  The Complaint also

16   directly states scienter existed.  *Id*. ¶ 61.  These allegations, and the reasonable

17   inferences drawn from them, satisfy Rule 9(b).

18        Finally, there is not any requirement under Rule 9(b) for the Complaint to

19   differentiate between Qi and his small personal law firm.  For all intents and

20   purposes, they are one and the same.  *See Ogbonna v. USPLabs, LLC,* No. 13-cv-

21   347-KC, 2014 U.S. Dist. LEXIS 79001, *33 (W.D. Tex. June 10, 2014) ("a plaintiff

22   may permissibly lump defendants together in a manner that satisfies Rule 9(b)

23   where the complaint also contains adequate allegations that the defendants are alter

24   egos of each other.").  Qi's law firm was Qi's vehicle for the fraud and not an

25   independent actor.  Therefore, Defendants are mistaken in claiming that

26   "[s]tatements and actions taken by *someone* at the Law Firm are not statements or

27   actions of Steve Qi, individually, and do not have the same legal effect."  Dkt. 17 at

28   13 (emphasis in original).

In short, Defendants posit an unsupported Rule 9(b) standard that, if applied, would require plaintiffs to complete full discovery prior to filing an initial pleading. That Defendants claim that the Complaint does not allow them to "prepare for trial" (Dkt. 17 at 8) highlights their confused standard in that it completely ignores the entire discovery phase of litigation.  The SEC states its fraud claims with particularity and more than satisfies Rule 9(b).

### B.    Rule 9(b) Does Not Apply to The Unregistered Broker Claim

The particularity requirement of Rule 9(b) does not apply to Section 15(a) of the Exchange Act, a strict liability statute requiring the registration of brokers.  Rule 9(b) only applies to claims of fraud, yet Defendants seek particularity even as to facts alleging the Section 15(a) violation, which has nothing to do with fraud.  For example, Defendants assert that the SEC has not provided specificity with regard to the Regional Center brochure the SEC alleges that Defendants obtained to distribute to clients. Dkt. 17 at 7.  Similarly, Defendants protest that the SEC did not specify for which Regional Center Qi hosted a seminar. *Id.*  These allegations are included in the Complaint to support the claim that Defendants acted as unregistered brokers. In lodging attacks at the Complaint as a whole, Defendants have lost sight that the particularity requirements of Rule 9(b) (which the SEC meets as to the fraud claims) do not apply to non-fraud allegations in the Complaint.  *See Vess*, 317 F.3d at 1105 ("Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a).").

### C.    The Fraud and Unregistered Broker Claims Satisfy Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(6).  The Court is not tasked with determining "whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted." *SEC v. Liu*, No. 16-cv-974-CJC-AGRx, 2016 U.S. Dist. LEXIS 181585, *7 (C.D. Cal. Aug. 17, 2016) (*citing Gilligan v.*

*Jamco Dev. Corp.*, 108 F.3d 247, 249 (9th Cir. 1997)).  Under Rule 12(b)(6), dismissal is only proper when there is a "lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (*quoting Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990)).

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them, construing the complaint in the light most favorable to the plaintiff. *See, e.g.*, *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  If the complaint fails to state a claim but it can possibly be cured by additional factual allegations, the court should grant leave to amend. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## 1. **The SEC States Claims for Relief under Sections 10(b) and 17(a)**

The Complaint alleges violations of Section 17(a) of the Securities Act,[5] which prohibits fraud in the offer or sale of securities, and violations of Section

---

[5] Section 17(a) of the Securities Act provides: "(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly— (1) to employ any device, scheme, or artifice to defraud; or (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser." 15 U.S.C. § 77q(a).

10(b) of the Exchange Act[6] and Rule 10b-5 thereunder,[7] which prohibit fraud in connection with the purchase or sale of any security.

Defendants do not explicitly argue pursuant to Rule 12(b)(6) that the Complaint fails to state fraud claims.  However, Defendants appear to attack the fraud claims beyond Rule 9(b).  They repeatedly claim that their lack of candor to their clients can only be a bar issue and not a securities violation and that there is no fraud because they do not have a duty to disclose the transaction-based compensation.  Dkt. 17 at 1, 10, 14, 24-25.  Defendants' positions are wrong.

Here, Defendants' material omissions were made in connection with the offer and sale of EB-5 securities, thus the federal securities laws apply.  Dkt. 1 ¶¶ 23-37.  In a securities action, an omission is actionable where there is a duty to disclose the information at issue.  *See, e.g., Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988); *Chiarella v. United States*, 445 U.S. 222, 235 (1980) ("When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak.").  A failure to disclose is actionable where "one party has information 'that the other [party] is entitled to know because of a fiduciary or other similar relation[ship] of trust and confidence between them.'"  *Id*. at 228.

---

[6] Section 10(b) of the Exchange Act provides: "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange— (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b).

[7] SEC Rule 10b–5, promulgated pursuant to Section 10(b), provides: "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5.

The attorney-client relationship creates a fiduciary duty that forms the basis for a securities law fraud charge.  For example, in *U.S. v. O'Hagan*, the Supreme Court found that an attorney violated Section 10(b) and Rule 10b-5 by misappropriating and trading on confidential information in breach of his fiduciary duty to his law firm and client.  521 U.S. 642, 652-54 (1997) ("A fiduciary who pretends loyalty to the principal while secretly converting the principal's information for personal gain 'dupes' or defrauds the principal.")(internal citations and quotations omitted).  *See also U.S. v. Chestman*, 947 F.2d 551, 568 (2d Cir. 1991) (reasoning that some relationships, including the attorney-client relationship, are "inherently fiduciary"); *Feng*, 2017 U.S. Dist. LEXIS 103592, at *21, 29-30 (finding an EB-5 attorney's failure to disclose receipt of commissions to his clients was "material as a matter of law" and a violation of the same fraud provisions at issue here).  In addition to violating fiduciary duties, Defendants violated their legal and ethical obligations to their clients.  *See, e.g.,* California Rules of Professional Conduct Rule 3-300 (avoiding interests adverse to a client), Rule 3-310(B)(4) (avoiding the representation of adverse interests), and Rule 3(500) (communication).  The Complaint adequately alleges the source of Defendants' duty to speak – their fiduciary, legal, and ethical duties to their clients arising from their attorney-client relationship.  *Id.* ¶¶ 7, 57.

Further, Defendants have a duty to provide the disclosures necessary to make affirmative statements not misleading.  An "affirmative statement that was materially misleading because of a failure to make additional disclosure" is fraudulent conduct known as a "half truth."  *Siemers v. Wells Fargo & Co.*, No. 05-cv-4518, 2006 U.S. Dist. LEXIS 60858, *16 (N.D. Cal., Aug. 14, 2006).  In *Siemers*, the Court denied a motion to dismiss when plaintiffs alleged that a prospectus stated that the investment adviser "may" consider sales of fund shares in deciding how to award future trading business when, in fact, the fund already had a fixed payback arrangement in place.  *Id.* at *17.  The court held that "[t]he

13

representation left the impression that the payback arrangement might (or might not) materialize when it was, in reality, already a done deal." *Id.  See also SEC v. Huttoe*, No. 96-cv-2543-GK, 1998 U.S. Dist. LEXIS 23211, *20, 32 (D.D.C. Sep. 14, 1998) (finding Rule 10b-5 liability when a newsletter stated that the defendant "may own shares" and "may act as" a paid consultant, when the defendant was actually being paid directly with stock for his advertising).  Here, in certain retainer agreement, Defendants disclosed to investors that they "may" receive commissions when they knew they *would* receive a commission in connection with the client's investment.  Dkt. 1 ¶ 59.  By failing to provide additional disclosures to make the retainer agreement language not misleading, Defendants neglected their duty and defrauded their clients.

Defendants claim that disclosures in the Regional Centers' offering documents absolve Defendants of any fraud liability stating that they have no duty "to disclose what had already been disclosed." Dkt. 17 at 1.  Defendants have misinterpreted the facts.  As alleged in the Complaint, certain offering documents state that Regional Centers' administrative fees were used to pay fees and expenses incurred by the Regional Centers, including the payment of commissions.  Dkt. 1 ¶ 24.  However, none of the offering documents disclosed that any fee would be paid to the *investor's own immigration attorney* or the amount of such fee.  *Id*.  Such documents, at times, implied that the Regional Center would pay commissions to persons working for the Regional Center.  *Id*.  But, such bare reference to commissions and fees would by no means put investors on notice that the investor's *own attorney*, a person legally obligated to act as their fiduciary, was in fact receiving transaction-based compensation from the very investments recommended by such attorney.  *See Siemers*, 2006 U.S. Dist LEXIS 60858, at *16-17 (disclosure that commissions "may" be paid does not sufficiently inform the investor of set arrangements to pay fees to brokers).

Precisely because they had a fiduciary, legal, and ethical duty to disclose such a serious conflict of interest to their clients and to make statements they made not misleading, Defendants had a duty under the securities laws to disclose their receipt of transaction-based compensation (which were at Defendants' discretion in certain instances), and they committed federal securities fraud by failing to do so. The fraud claims satisfy Rule 12(b)(6).

## 2.  **The SEC States a Claim For Relief Under Section 15(a)**

Section 15(a)(1) of the Exchange Act makes it unlawful for a broker to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security unless such broker is (a) registered with the Commission, (b) in the case of a natural person, is associated with a registered entity, or (c) satisfies the conditions of an exemption or safe harbor.  15 U.S.C. § 78o(a)(1).  Section 15(a) is a strict liability statute; neither scienter nor negligence is required to prove its violation. *See, e.g., SEC v. Interlink Data Network*, No. 93-cv-3073, 1993 U.S. Dist. LEXIS 20163, *46 (C.D. Cal. Nov. 15, 1993).  A "broker" is generally defined in Section 3(a)(4)(A) of the Exchange Act as "any person engaged in the business of effecting transactions in securities for the account of others."  15 U.S.C. § 78c(a)(4)(A); *see also* 15 U.S.C. § 78c(a)(9) (defining "person" to include a company).

The phrase "engaged in the business" is not defined by statute.  Courts interpreting this phrase have observed that "[t]ransaction-based compensation, or commissions are one of the hallmarks of being a broker-dealer," because such compensation "represents a potential incentive for abusive sales practices that registration is intended to regulate and prevent."  *Cornhusker Energy Lexington, LLC v. Prospect St. Ventures*, No. 04-cv-586, 2006 U.S. Dist. LEXIS 68959, *20 (D. Neb. Sep. 12, 2006).  *See also SEC v. Collyard*, 154 F. Supp. 3d 781, 789 (D. Minn. 2015), *affirmed in part and vacated in part by* 861 F.3d 760 (8th Cir. 2017).

15

1         In addition to transaction-based compensation, many courts employ the so-

2    called *Hansen* factors: "whether that person (1) is an employee of the issuer; (2)

3    received commissions as opposed to a salary; (3) is selling, or previously sold, the

4    securities of other issuers; (4) is involved in negotiations between the issuer and the

5    investor; (5) makes valuations as to the merits of the investment or gives advice;

6    and (6) is an active rather than passive finder of investors." *SEC v. Hansen*, No.

7    83-cv-3692, 1984 U.S. Dist. LEXIS 17835, *26 (S.D.N.Y. Apr. 6, 1984). *See also*

8    *Feng*, 2017 U.S. Dist. LEXIS 103592, at *18-20 (adopting *Hansen* factors in

9    finding that EB-5 immigration attorney acted as an unregistered broker); *SEC v.*

10   *Arcturus Corp.*, 171 F. Supp. 3d 512, 532 (N.D. Tex. 2016) (regularity of

11   participation in securities transactions is a strong indicator of "being engaged in the

12   business"). No one factor is dispositive, nor is the SEC required to allege the

13   existence of all of the various factors cited in the case law. *See SEC v. Benger*, 697

14   F. Supp. 2d 932, 945 (N.D. Ill. 2010) ("The factors articulated in *Hansen* . . . were

15   not designed to be exclusive.").

16        Here, the SEC's Complaint contains sufficient factual matter to state an

17   unregistered broker claim. To start, the SEC alleges that Defendants received

18   transaction-based compensation exceeding $1.6 million in connection with at least

19   74 investor clients. Dkt. 1 ¶¶ 6, 46-54. Besides receiving transaction-based

20   compensation, the SEC alleges additional *Hansen* factors. Defendants regularly

21   participated in securities transactions and, in fact, recommended their clients

22   purchase the securities of only six different Regional Centers for nearly eight years.

23   *Id*. ¶¶ 4,6, 46. When Qi met with clients he recommended one or a limited number

24   of EB-5 offerings. Id. ¶ 38. In light of Defendants' claim that there are "hundreds

25   of Regional Centers selling securities" (Dkt. 17 at 2), the fact that Qi advised his

26   clients to invest in offerings of only a few Regional Centers out of hundreds

27   illustrates his role as a broker, and supports an additional *Hansen* consideration.

28

1    Defendants also facilitated these transactions by serving as liaisons between

2  offeror and investor.  Defendants transmitted the offering documents between the

3  Regional Centers and the investors (Dkt. 1 ¶ 39) and handled nearly all of the

4  communication between the parties (*id*. ¶ 40).  Finally, Defendants activity solicited

5  EB-5 investors.  Defendants obtained brochures from at least one Regional Center

6  to distribute to potential clients.  *Id*. ¶ 41.  Also, on at least one occasion, Qi hosted

7  a seminar to promote one Regional Center's EB-5 investment.  *Id*.

8    Defendants even memorialized their marketing efforts in written contracts

9  with Regional Centers.  Defendants (or their nominees acting on their behalf)

10  executed agreements with four Regional Centers, which required Defendants to

11  market the Regional Centers' EB-5 projects and/or locate and introduce EB-5

12  investors.  *Id*. ¶¶ 42-43.  Simply put, with respect to the Section 15(a) count, the

13  Complaint states a claim under Rule 12(b)(6).

14    Defendants imply that Section 15(a) does not apply to them because lawyers

15  should be excluded from broker registration requirements.  Defendants contend that

16  they only provided legal services and should only be regulated by their state bar.

17  Dkt. 17 at 15, 24-25.  This is simply not true.  Attorneys who act as brokers are

18  subject to the registration requirements of Section 15(a).  *See* 15 U.S.C. §

19  78c(4)(A); *Feng*, 2017 U.S. Dist. LEXIS 103592, at *16-20 (granting SEC's

20  motion for summary judgment and finding EB-5 attorney violated Section 15(a));

21  *Benger*, 697 F. Supp. 2d at 945 (denying defendant-attorney's 12(b)(6) motion to

22  dismiss Section 15(a)(1) claim, where attorney received transaction-based

23  compensation from various issuers of Regulation S securities).  As stated decades

24  ago, "Insofar as [attorneys] are retained by an issuer specifically for the purpose of

25  selling securities to the public and receive transaction-based compensation, these

26  persons are engaging in the business of effecting transactions securities for the

27  accounts of others.  Accordingly, these persons should register as broker-dealers."

28  *Persons Deemed Not to Be Brokers*, Exchange Act Release No. 22172, 50 Fed.

Reg. 27940 (1985).  As alleged in the Complaint, Defendants engaged in brokerage activity.  Dkt. 1 ¶¶ 36-47.  While they may have also worn the hat of immigration attorneys, Defendants wore the hat of EB-5 securities salesman – exactly the type of person and entity the broker registration provisions were designed to capture.

In fact, Defendants' actions suggest that they knew their brokerage activity may constitute a violation of federal securities laws.  *Id*. ¶¶ 48-56.  Even though Section 15(a) is a strict liability statute and the SEC need not prove scienter, these actions by Defendants undermine their purported surprise that Section 15(a) could apply to them.  After a Regional Center expressed concern to Qi that paying immigration attorneys may violate broker registration requirements, Qi had foreign relatives act as "nominees" to receive transaction-based compensation through overseas bank accounts on Defendants' behalf.  *Id*. ¶ 52.  The sole purpose of these nominees was to collect the commissions paid by Regional Centers on behalf of Defendants.  *Id*. ¶ 53.  The nominees had no role in the EB-5 process and all of the compensation paid by Regional Centers – totaling over $1 million – belonged to Defendants. *Id*. ¶¶ 53-54.  Defendants engaged in an entire scheme to avoid the broker registration requirements that they now insist could never apply to them as lawyers.

Defendants also argue that they should be exempt from Section 15(a) registration in light of the exemption lawyers are granted in Section 202(a)(11)(B) of the Investment Advisory Act of 1940.  Dkt. 17 at 17, 25.  This theory was addressed and explicitly rejected in the context of another EB-5 immigration attorney facing Section 15(a) charges.  *See Feng*, 2017 U.S. Dist. LEXIS 103592, at *17.  First, there is no attorney exception set forth in Section 15 of the Exchange Act.  *Id*.  As the court in *Feng* held "where the legislature expressly excluded attorneys from the definition of investment advisor under the Investment Advisors Act, but did not exclude attorneys from the definition of [brokers] in the Securities Exchange Act, this demonstrates the legislature did not intend to exclude attorneys

18

from broker registration requirements under the Securities Exchange Act." *Id*. at *17, n.12.

### 3.  **Defendants' Reliance on *SEC v. Kramer* is Misplaced**

Defendants' attempt to avoid potential liability under Section 15(a) by relying on *SEC v. Kramer*, 778 F. Supp. 2d 1320 (M.D. Fla. 2011), is misplaced.[8] Dkt. 17 at 18-24.

The facts of *Kramer* (an opinion on a post-trial motion for judgment on partial findings) are readily distinguishable from the facts of this case.  Kramer was not a lawyer.  Instead, Kramer "told a small but close group (each susceptible to description as either a friend or an intimate)" about a particular investment, and Kramer received transaction-based compensation in return.  *Kramer*, 778 F. Supp. 2d at 1339.  The court found that Kramer did not act as an unregistered broker in violation of Section 15(a) because he was not "engaged in the business of effecting transactions in securities for the accounts of others."  *Id*. at 1341.

Unlike in *Kramer*, Defendants here were not dealing with a small or close group of friends or intimates.  Defendants' conduct went far beyond making a few isolated introductions and "bringing together the parties to a transaction."  *Id*. at 1339.  Defendants participated in at least 74 securities transactions with over 6 different issuers, recommended certain investments and even provided a narrow list of those recommendations, facilitated their clients' investments by transmitting offering documents and communicating with the issuers, distributed issuer brochures and hosted at least one seminar to promote an investment, executed

---

[8] Defendants' reliance on *American Bankers Association v. SEC*, 804 F.2d 739 (D.C. Cir. 1986) and *Pinter v. Dahl*, 486 U.S. 622 (1988) is similarly misplaced.  In *American Bankers*, the Court held that the SEC had no authority to regulate banks as broker-dealers (804 F.2d at 739-40); yet, there is no such decision that lawyers cannot be regulated as brokers when they are "engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A).  *Pinter* is similarly inapt because here Defendants are more than "mere peripheral participant[s] in the solicitation of a transaction." Dkt. 17 at 24.  Defendants acted as brokers and should have been registered as such.

marketing agreements with multiple issuers, and received transaction-based compensation from the issuers.  Dkt. 1 ¶¶ 38-43, 46.

By primarily focusing on *Kramer* – a case inapposite from this action about a businessman who recommended a single investment to a handful of his family and friends – Defendants ignore the direct precedent from this District in which an EB-5 attorney and his firm were found to have acted as unregistered brokers in a strikingly similar factual situation.  *Feng*, 2017 U.S. Dist. LEXIS 103592.  There can be no question that the SEC adequately alleges an unregistered broker claim.

## IV.   CONCLUSION

For the foregoing reasons, the SEC respectfully requests that Defendants' Motion to Dismiss be denied.  Should the Court find the Complaint deficient, the SEC respectfully requests leave to amend it.

DATED:  March 5, 2018                              Respectfully submitted,

                                    /s/ Kenneth J. Guido
                                    Kenneth J. Guido
                                    Sarah M. Hall
                                    D. Ashley Dolan
                                    Heather A. Powell

                                    Attorneys for Plaintiff
                                    Securities and Exchange Commission

# PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is:

[X]  U.S. SECURITIES AND EXCHANGE COMMISSION, 100 F Street, NE, Washington, DC 20549

Telephone No. (202) 551-4480; Facsimile No. (202) 772-9282.

On March 5, 2018, I caused to be served the document entitled **Plaintiff Securities And Exchange Commission's Opposition to Defendants' Motion To Dismiss** on all the parties to this action addressed as stated on the attached service list:

[ ]  **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

[ ]  **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Washington, DC, with first class postage thereon fully prepaid.

[ ]  **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

[ ]  **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

[ ]  **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Washington, DC.

[ ]  **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

[X]  **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

[ ]  **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: _March 5, 2018_____         _/s/ Kenneth J. Guido_____

**<u>SEC v. STEVE QI, et al.</u>**
**United States District Court – Central District of California**
**Case No. 2:17-cv-08856-CJC(JCx)**

<u>SERVICE LIST</u>

Stanley C. Morris, Esq.  (served by CM/ECF only)
Corrigan & Morris LLP
201 Santa Monica Blvd., Suite 475
Santa Monica, CA 90401
Email: scm@cormorllp.com

*Attorney for Defendants Steve Qi and Law Offices of Steve Qi & Associates, A Professional Corporation*

22